UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Douglas Company, Inc.,
     Plaintiff

     v.                                        Case No. 19-cv-1234-SM
                                   Opinion No. 2020 DNH 089

My Brittany's LLC and
Jacqueline Sultana,
     Defendants

# O R D E R

Plaintiff, Douglas Company, is a designer and seller of plush stuffed toys that include, for example, various dogs and cats.  Its principle place of business is in Keene, New Hampshire.  Douglas brings this action against My Brittany's LLC and Jacqueline Sultana, alleging that defendants have infringed several of its copyrights by manufacturing and selling copies of stuffed toys for which Douglas holds copyright registrations. See Exhibits to Complaint (document no. 3) (showing side-by-side comparisons of the copyrighted toys and the allegedly infringing toys).  Douglas alleges that defendants are making the infringing sales online through both Amazon.com and Kingdomkuddles.com, a website owned by defendant Sultana.

Pending before the court is defendants' motion to dismiss for lack of personal jurisdiction and/or improper venue.  See Fed. R. Civ. P. 12(b)(2) and 12(b)(3).  In the alternative, defendants move for a change of venue and seek to have this action transferred to the Eastern District of Michigan.  For the reasons given below, the court concludes that it lacks personal jurisdiction over defendants.  But, rather than dismiss plaintiff's facially valid copyright claim, it will transfer this action to the United States District Court for the Eastern District of Michigan.  See 28 U.S.C. § 1631.

## Standard of Review

When a defendant challenges the court's personal jurisdiction under Fed. R. Civ. P. 12(b)(2), the "plaintiff has the burden of establishing that jurisdiction over the defendant lies in the forum state."  Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 34 (1st Cir. 2016).  Allegations of jurisdictional facts are construed in the plaintiff's favor, see Buckley v. Bourdon, 682 F. Supp. 95, 98 (D.N.H. 1988), and if, as here, the court proceeds based upon the written submissions of the parties without an evidentiary hearing, the plaintiff need only make a prima facie showing that jurisdiction exists.  See generally A Corp. v. All American Plumbing, Inc., 812 F.3d 54, 58 n.5 (1st Cir. 2016).  See also

2

Kowalski v. Doherty, Wallace, Pillsbury & Murphy, 787 F.2d 7, 8
(1st Cir. 1986); Boit v. Gar-Tec Products, Inc., 967 F.2d 671,
674-75 (1st Cir. 1992).[1]

In the absence of an evidentiary hearing, "the inquiry is
whether [plaintiff] has proffered evidence which, if credited,
is sufficient to support findings of all facts essential to
personal jurisdiction."  A Corp., 812 F.3d at 58 (quoting
Phillips v. Prairie Eye Ctr., 530 F.3d 22, 26 (1st Cir. 2008)).
In making a prima facie showing of jurisdiction, a plaintiff may
not rely solely on unsupported allegations in its pleadings.
"Rather, [a plaintiff] must put forward 'evidence of specific
facts' to demonstrate that jurisdiction exists."  A Corp., 812
F.3d at 58 (quoting Platten v. HG Bermuda Exempted Ltd., 437
F.3d 118, 134 (1st Cir. 2006)).  The court accepts plaintiff's
"properly documented evidentiary proffers as true," and
construes them in the light most favorable to plaintiff's
jurisdictional claim.  Id.  The court also considers
uncontradicted facts put forth by the defendant.  It will not,
however, "credit conclusory allegations or draw farfetched
inferences."  Negron-Torres v. Verizon Communications, Inc., 478

---

[1]    Neither party has requested an evidentiary hearing, nor has
Douglas sought to engage in any jurisdictional discovery.

F.3d 19, 23 (1st Cir. 2007) (citations and quotation marks
omitted).

Because Douglas's claim arises under federal law, the
court's inquiry into whether it may exercise personal
jurisdiction over My Brittany's LLC and Sultana is necessarily
distinct (at least in theory) from the more typical inquiry
applicable in diversity cases.  The court has explained this at
length in prior opinions and that discussion need not be
repeated.  See generally Intellitech Corp. v. Inst. of Elec. &
Elecs. Engineers, 2017 DNH 35, 2017 WL 758487, at *4 (D.N.H.
Feb. 27, 2017); Battle Foam, LLC v. Wade, 2010 DNH 108, 2010 WL
2629559, at *2 (D.N.H. June 29, 2010).  It is sufficient to note
that Douglas does not claim that the federal statute at issue
(The Copyright Act) authorizes national service of process.
Consequently, the Federal Rules of Civil Procedure provide that
Douglas must demonstrate that defendants were served in a manner
consistent with New Hampshire's long-arm statutes.  See Fed. R.
Civ. P. 4(e) and (k).  Those long-arm statutes authorize the
exercise of jurisdiction over foreign defendants to the full
extent permitted by federal law.  See N.H. Rev. Stat. Ann 510:4
(individuals) and 293-A:15.10 (corporations).  See also Sawtelle
v. Farrell, 70 F.3d 1381, 1388 (1st Cir. 1995); Phelps v.
Kingston, 130 N.H. 166, 171 (1987).  Stated another way, New

Hampshire's long-arm statutes reach as far as the outer limits of due process protections under the United States Constitution will permit.  Accordingly, the court need only determine whether the exercise of personal jurisdiction over defendants in New Hampshire would comport with federal due process guarantees under the Fourteenth Amendment.  See generally ICP Solar Techs., Inc. v. TAB Consulting, Inc., 413 F. Supp. 2d 12, 15 (D.N.H. 2006).

"[D]ue process requires only that in order to subject a [foreign] defendant to a judgment in personam," that defendant must "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotations omitted).  Consistent with those threshold requirements, "[a] district court may exercise authority over a defendant by virtue of either general or specific jurisdiction." Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n., 142 F.3d 26, 34 (1st Cir. 1998) (citing Donatelli v. National Hockey League, 893 F.2d 459, 462-63 (1st Cir. 1990)).  Douglas invokes only this court's specific personal jurisdiction over Sultana and My Brittany's.

"[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011) (internal quotations omitted).  "[T]he constitutional test for determining specific jurisdiction has three distinct components, namely, relatedness, purposeful availment (sometimes called 'minimum contacts'), and reasonableness." Adelson v. Hananel, 652 F.3d 75, 80-81 (1st Cir. 2011) (citations and internal quotations omitted).  See also Sawtelle, 70 F.3d at 1389-95 (describing the three essential jurisdictional elements as "relatedness," "purposeful availment," and the so-called "Gestalt factors").

## Background

The relevant facts are largely undisputed and can be recounted fairly quickly.

I.   The Parties.

Douglas is a New Hampshire-based designer and seller of stuffed toy animals that include a variety of toy cats and dogs. It holds copyright registrations for many of those toys. Douglas alleges that, in 2019, it became aware that My Brittany's was selling stuffed toy animals that appeared to be

copies of several designs for which Douglas holds copyright
registrations.  Specifically, Douglas claims that My Brittany's
was making (and continues to make) infringing sales through
Amazon.com (as an "FBA" or "Fulfilled by Amazon" seller), and
through a website owned and operated by Sultana:
kingdomkuddles.com.  Douglas further alleges that defendants are
using the very same Indonesian manufacturer to produce the
allegedly infringing toys that Douglas used to produce its
copyrighted toys - a manufacturer that possesses the patterns
and 3-D samples of many of Douglas's designs.  Thus, says
Douglas, defendants had access to its design instructions for
the copyrighted toys and used those instructions to produce and
sell infringing copies.

My Brittany's is a limited liability corporation organized
under the laws of Michigan, with a principal place of business
in Wixom, Michigan.  Sultana is a member of that LLC, as well as
one of its employees, and she resides in Wixom, Michigan.  All
members of My Brittany's are residents of Michigan.  Although My
Brittany's stores some of its products out-of-state (in a
warehouse in Westlake, Ohio), it does not store any products in
New Hampshire.  It does not have offices or places of business
in New Hampshire.  No member (including Sultana), employee,
agent, or representative of My Brittany's has ever come to New

Hampshire to attend trade shows or to undertake business on behalf of My Brittany's.  My Brittany's does not mail any solicitations or catalogs to New Hampshire, nor does it have any wholesalers, distributors, or sales agents in New Hampshire, nor does it sell products that are specifically designed for the New Hampshire market.

II.  Contacts with this Forum.

According to defendants, they have reviewed their sales records and assert (without contradiction) that they have made no sales of any plush toys to anyone in New Hampshire through the kingdomkuddles.com website (or a related website: wholesaleplush.com).  The only sales made by My Brittany's into New Hampshire consist of a few orders for stuffed toys placed by an employee of Douglas (William Mitchell), and filled by My Brittany's through Amazon.  In total, Mitchell placed three orders:

> On November 24, 2019, Mitchell ordered one Kingdom
> Kuddles "Brady the Beagle Puppy" Stuffed Plush Animal
> Dog from My Brittany's on Amazon.  That order shipped
> to Keene, New Hampshire, on November 25, 2019.  The
> order totaled $16.97.  Exhibit 6 to Affidavit of Adam
> Bercowetz (document no. 15-8) at 2.  That order did
> not involve any allegedly infringing stuffed toys
> identified in Douglas's complaint.
>
> On November 26, 2019, Mitchell ordered 7 additional
> stuffed plush animals from My Brittany's on Amazon.

Those items shipped to New Hampshire on November 26, 2019.  That order totaled $126.81.  Id. at 3-4.

Finally, on November 27, 2019, Mitchell ordered 1 stuffed plush animal from My Brittany's on Amazon. That order shipped the same day and totaled: $14.97. Id. at 5.

Of the nine stuffed toys that Douglas purchased from My Brittany's, the complaint alleges that six infringe Douglas's copyrights: Border Collie (two sizes); Australian Shepherd, Plush Grey Cat; Tri-colored Corgi; and Siberian Husky.  The total purchase price of those six allegedly infringing toys was $128.81.  Parenthetically, the court notes that Douglas also points out that another of its employees, Dan Irvine, attempted to purchase two additional stuffed toys from kingdomkuddles.com. But, that order was cancelled and never shipped to New Hampshire.  It is not relevant to the court's jurisdictional analysis.

Douglas also alleges that beginning in or around 2014 and continuing through at least January of 2018, an entity known as "DollsHobbiesNMore" purchased more than $30,000 worth of stuffed toys from Douglas (which, presumably, were shipped from New Hampshire to Michigan).  But, Douglas has not articulated how the alleged purchases made by DollsHobbiesNMore "relate to" its pending copyright infringement claims against Sultana and My

Brittany's (other than suggesting the Sultana and the various entities are somehow connected).[2]

Neither Sultana Enterprises nor DollsHobbiesNMore is named as a defendant.  And, Douglas has not alleged that either of the named defendants – Ms. Sultana or My Brittany's - ever purchased stuffed toys from Douglas.  Thus, those purchases – while substantial – are not relevant to the inquiry into whether the court may exercise personal jurisdiction over the named defendants.

Finally, Douglas asserts that the court may properly exercise personal jurisdiction over My Brittany's and Sultana because they have "placed products that infringe on the copyrights in question in the stream of commerce with the knowledge and intent that they would be used, offered for sale, and sold by others in [New Hampshire]."  Complaint (document no. 1) at para. 6 (emphasis supplied).  See generally Asahi Metal

---

[2]   "DollsHobbiesNMore" is a "dba" of Sultana Enterprises, LLC, a Michigan limited liability corporation.  Neither is a named defendant.  Ms. Sultana says that she was previously a member of Sultana Enterprises, but that entity has not conducted business since some time in 2018.  See Affidavit of Jacqueline Sultana (document no. 10-2) at para. 13.  Although neither party addresses the issue, it is conceivable that DollsHobbiesNMore was purchasing stuffed toys from Douglas and then reselling them.

Industry Co. v. Superior Ct. of Cal., 480 U.S. 102, 107 (1987). But, at least as articulated by Douglas, the "stream of commerce" theory of personal jurisdiction has been rejected. See generally  J. McIntyre Mach., Ltd. v. Nicastro, 564 U.S. 873, 883 (2011) ("This Court's precedents make clear that it is the defendant's actions, not his expectations, that empower a State's courts to subject him to judgment.").  See also Id. at 890-91 ("I am not persuaded by the absolute approach adopted by the New Jersey Supreme Court and urged by respondent and his amici.  Under that view, a producer is subject to jurisdiction for a products-liability action so long as it 'knows or reasonably should know that its products are distributed through a nationwide distribution system that might lead to those products being sold in any of the fifty states.'  In the context of this case, I cannot agree.") (Breyer, J. concurring) (emphasis in original).[3]  See generally Phillips v. Prairie Eye Ctr., 530 F.3d at 28-29 ("When a plaintiff tire manufacturer argued that a defendant rim manufacturer was subject to personal jurisdiction in Puerto Rico, we noted that even if the defendant

---

[3]    Because the opinion of the Court in Nicastro was not embraced by a majority of the justices, the "holding" of the Court "may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds."  Marks v. United States, 430 U.S. 188, 193 (1977).  In Nicastro, that "narrowest grounds" opinion was authored by Justice Breyer.

had specific knowledge that the stream of commerce would move its tire rims into Puerto Rico, 'awareness alone would not be enough to constitute the purposeful availment which is necessary for a showing of minimum contacts.'") (quoting Alers-Rodriguez v. Fullerton Tires Corp., 115 F.3d 81, 85 (1st Cir. 1997)).

Simply having the desire or even the intent to serve a national audience does not mean that a defendant has purposefully availed itself of the privilege of conducting business in a particular forum. Similarly, merely placing its products into the national "stream of commerce" does not subject My Brittany's to this court's specific personal jurisdiction. See, Nicastro, 564 U.S. at 877-85; Asahi Metal Industry Co., 480 U.S. at 108-13 (plurality opinion). See generally World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286 (1980).

So, the jurisdictionally-relevant contacts between My Brittany's and New Hampshire – that is, those "related to" this copyright litigation - boil down to two orders for My Brittany's products placed through Amazon by an employee of Douglas on November 26 and 27, 2019, for a total of six allegedly infringing stuffed toys. The retail value of those six allegedly infringing stuffed toys was $128.81. Douglas made all of those purchases, it would seem, for the sole purpose of

inducing My Brittany's to make sales (and cause products to be
delivered) into this forum.  There is no evidence that My
Brittany's previously sold products to New Hampshire residents,
nor is there evidence of any subsequent sales into New
Hampshire.  Thus, as discussed more fully below, it would seem
that Douglas has attempted to "manufacture" personal
jurisdiction over My Brittany's by luring it into a forum in
which it had never before done other business.


## Discussion

I.   The Court Lacks Personal Jurisdiction over Ms. Sultana

Douglas does not allege that Sultana, personally, has
engaged in any infringing activity.  Nor does it allege that she
had any personal contacts with this forum.  Nor has it briefed
(or argued) that the court may constitutionally exercise
personal jurisdiction over her based solely upon the forum-based
contacts of an LLC of which she is a member (i.e., My Brittany's
and/or Sultana Enterprises, LLC, d/b/a "DollsHobbiesNMore").
Consequently, the court deems that latter argument forfeit and
declines to address the issue.  Given that, Douglas has not made
a prima facie showing that the court may exercise personal
jurisdiction over Sultana.

II.  <u>The Court Lacks Personal Jurisdiction over My Brittany's</u>

Of course, the fact that Amazon, rather than My Brittany's,

actually delivers defendants' products is not, standing alone,

an impediment to this court's exercise of personal jurisdiction,

just as it would not be a defense to say that Federal Express or

UPS, rather than My Brittany's, transported the packages to New

Hampshire.  To the extent My Brittany's advances that argument,

<u>see</u> Defendants' Reply Brief (document no. 16) at 3, it is

incorrect.  <u>See, e.g.</u>, <u>Standard Process, Inc. v. Antitrend LLC</u>,

No. 19-CV-99-JDP, 2020 WL 553871, at *4 (W.D. Wis. Feb. 4, 2020)

("[U]sing intermediaries like Amazon to sell and ship products

has no bearing on the minimum-contacts analysis").


The question presented is whether, by offering products

online to a national audience (including residents of New

Hampshire), and then by actually selling nine products (six of

which allegedly infringe Douglas's copyrights) to the plaintiff

here in New Hampshire, My Brittany's has established sufficient

contacts with this forum for the court to properly exercise

personal jurisdiction over it.  As noted above, that requires

Douglas to demonstrate that: (1) its copyright claims are

"related to" My Brittany's activities in this forum; (2) that My

Brittany's has "purposefully availed" itself of the privilege of

doing business in this forum (or, stated slightly differently,

that My Brittany's has established sufficient "minimum contacts"
with this forum); and, finally (3) that exercising personal
jurisdiction over My Brittany's would comport with
constitutional principles of due process and fundamental
fairness.

Based upon the record evidence, the court is constrained to
conclude that Douglas has not made even a <u>prima</u> <u>facie</u> showing
that the exercise of specific personal jurisdiction over My
Brittany's would comport with federal due process standards.
Among other things, Douglas has not shown that My Brittany's
"purposefully availed" itself of the privilege of conducting
business in this forum or that it had sufficient "minimum
contacts" with this forum.  As the Supreme Court has observed,

> This "purposeful availment" requirement ensures that a
> defendant will not be haled into a jurisdiction solely
> as a result of "random," "fortuitous," or "attenuated"
> contacts . . . Jurisdiction is proper, however, where
> the contacts proximately result from actions by the
> defendant himself that create a "<u>substantial</u>
> <u>connection</u>" with the forum State.  Thus where the
> defendant "deliberately" has engaged in <u>significant</u>
> <u>activities</u> within a State, or has created "<u>continuing</u>
> <u>obligations</u>" between himself and residents of the
> forum, he manifestly has availed himself of the
> privilege of conducting business there.

<u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 475-76 (1985)
(citations and footnotes omitted) (emphasis supplied).

To be sure, courts across the country have reached divergent opinions about the constitutional limits of personal jurisdiction in cases like this.  Indeed, the Supreme Court itself acknowledged, but avoided, the difficult jurisdictional questions raised by cases involving e-commerce, internet retailers, and sellers using intermediaries like Amazon and eBay to facilitate sales.  See, Nicastro, 564 U.S. at 890 ("But what do those standards mean when a company targets the world by selling products from its Web site?  And does it matter if, instead of shipping the products directly, a company consigns the products through an intermediary (say, Amazon.com) who then receives and fulfills the orders?  And what if the company markets its products through popup advertisements that it knows will be viewed in a forum?  Those issues have serious commercial consequences but are totally absent in this case.") (Breyer, J. concurring).

Nevertheless, the court is persuaded that My Brittany's limited sales (in terms of both absolute numbers and total retail value) in New Hampshire – sales that were made only at the instigation of the plaintiff – are insufficient to constitute a purposeful availment of the privilege of doing business in this forum.  Stated slightly differently, those sales are not enough to establish the "minimum contacts" with

this forum required by the Constitution to exercise personal
jurisdiction.  Three sales into New Hampshire of nine products
totaling less than $160 are simply not enough (and, of course,
two sales of six allegedly infringing toys, with a retail value
of under $130, are even less).  Again, Justice Breyer's
concurrence in Nicastro is instructive:

> None of our precedents finds that a single isolated
> sale, even if accompanied by the kind of sales effort
> indicated here, is sufficient.  Rather, this Court's
> previous holdings suggest the contrary.  The Court has
> held that a single sale to a customer who takes an
> accident-causing product to a different State (where
> the accident takes place) is not a sufficient basis
> for asserting jurisdiction.  See World-Wide Volkswagen
> Corp. v. Woodson, 444 U.S. 286 (1980).  And the Court,
> in separate opinions, has strongly suggested that a
> single sale of a product in a State does not
> constitute an adequate basis for asserting
> jurisdiction over an out-of-state defendant, even if
> that defendant places his goods in the stream of
> commerce, fully aware (and hoping) that such a sale
> will take place.  See Asahi Metal Industry Co. v.
> Superior Court of California, 480 U.S. 102, 111, 112
> (opinion of O'Connor, J.) (requiring "something more"
> than simply placing "a product into the stream of
> commerce," even if defendant is "aware" that the
> stream "may or will sweep the product into the forum
> State"); id., at 117 (Brennan, J., concurring in part
> and concurring in judgment) (jurisdiction should lie
> where a sale in a State is part of "the regular and
> anticipated flow" of commerce into the State, but not
> where that sale is only an "eddy," i.e., an isolated
> occurrence); id., at 122, 107 S.Ct. 1026 (Stevens, J.,
> concurring in part and concurring in judgment)
> (indicating that "the volume, the value, and the
> hazardous character" of a good may affect the
> jurisdictional inquiry and emphasizing Asahi's
> "regular course of dealing").

> Here, the relevant facts found by the New Jersey
> Supreme Court show no "regular . . . flow" or "regular
> course" of sales in New Jersey; and there is no
> "something more," such as special state-related
> design, advertising, advice, marketing, or anything
> else.

Nicastro, 564 U.S. at 888-89 (Breyer, J. concurring).

So it is in this case.  My Brittany's has not directed a "regular flow" of sales into this forum, nor has it established a "regular course" of business here.  There is no "something more" that relates directly to this forum, "such as special state-related design, advertising, advice, [or] marketing."  Id. at 889.[4]

Rather, My Brittany's meager sales into this forum appear to be merely an "eddy" of its regular sales flow - an isolated few events (induced by plaintiff), that have not been repeated and had not occurred previously.  See also Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co., LLC, No. 15 CIV. 8459 (LGS), 2016 WL 3748480, at *3 (S.D.N.Y. July 8, 2016) ("For internet sellers who use an internet storefront like Amazon, courts

---

[4]    Conceivably, one might argue that the "something more" in this copyright case is the fact that the "injury" flowing from defendant's alleged copyright infringement was felt by Douglas in this forum.  Douglas does not, however, advance any such argument.  Consequently, the court declines to discuss it.

generally distinguish between two categories.  First are
commercial vendors who use it as a means for establishing
regular business with a remote forum.  Jurisdiction is proper as
to these defendants.  In the second category are occasional
sellers who use an internet service once to sell goods to the
highest bidder who happens to be in the forum state.
Jurisdiction is improper as to these sellers assuming no
additional contacts with the forum state.") (emphasis supplied;
citations and internal punctuation omitted).  While My
Brittany's might properly be viewed as a "commercial vendor," it
has not "establishe[d] regular business" with this forum.
Rather, for purposes of this case (as My Brittany's conduct
relates to New Hampshire), it is more akin to an "occasional
seller" who has used the internet to make a few isolated sales
to a buyer who happens to be in this state.

    This area of the law is both evolving and decidedly
unsettled.  Consequently, rational arguments can be made to
support the exercise of personal jurisdiction over My Brittany's
under the circumstances of this case.  That is particularly true
to the extent that cases like Zippo Manufacturing and its
progeny retain any persuasive value.  See Zippo Mfg. Co. v.
Zippo Dot Com, Inc., 952 F. Supp. 1119 (W.D. Pa. 1997)
(distinguishing between websites that "clearly [do] business

over the Internet" with those that are merely "passive," doing
"little more than mak[ing] information available to those who
are interested in it" and crafting a "sliding scale" test to
measure a website's contacts with a forum state, reasoning that
"the likelihood that personal jurisdiction can be
constitutionally exercised is directly proportionate to the
nature and quality of commercial activity that an entity
conducts over the Internet.").

     But, the decision in Zippo is more than 20 years old and
much has changed since it was issued – particularly the ways by
which websites now monetize viewership, and the relative paucity
of purely "passive" or "informational" websites.  See, e.g.,
Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball,
Inc., 751 F.3d 796, 803 (7th Cir. 2014) ("The interactivity of a
website is also a poor proxy for adequate in-state contacts.  We
have warned that courts should be careful in resolving questions
about personal jurisdiction involving online contacts to ensure
that a defendant is not haled into court simply because the
defendant owns or operates a website that is accessible in the
forum state, even if that site is 'interactive.'  This makes
sense; the operation of an interactive website does not show
that the defendant has formed a contact with the forum state.
And, without the defendant's creating a sufficient connection

(or 'minimum contacts') with the forum state itself, personal
jurisdiction is not proper.") (citations omitted; emphasis in
original).  See also Kindig It Design, Inc. v. Creative
Controls, Inc., 157 F. Supp. 3d 1167, 1174 (D. Utah 2016)
("[B]ecause the number of entities that have interactive
websites continues to grow exponentially, application of the
Zippo framework would essentially eliminate the traditional
geographic limitations on personal jurisdiction."); Sioux
Transportation, Inc. v. XPO Logistics, Inc., No. 5:15-CV-05265,
2015 WL 9412930, at *6 (W.D. Ark. Dec. 22, 2015) (cloud
computing and increased user interaction with websites "calls
into question the modern usefulness of the Zippo test's tri-
parte framework.  The transmission of computer files over the
internet is perhaps no longer an accurate measurement of a
website's contact to a forum state.").  See generally A.
Trammell and D. Bambauer, Personal Jurisdiction and the
"Interwebs," 100 Cornel L. Rev. 1129, 1132 (2015) ("The Zippo
sliding scale seemed beautifully simple and has proved
singularly influential.  Most courts to confront the problem of
Internet-based jurisdiction have relied favorably on Zippo, even
though the test's supposed virtues are chimerical.  It distorts
the doctrine and its guiding principles.  It is predicated on a
superficial analogy between physical and virtual worlds.  And it
has proved conspicuously indeterminate.").

And, of course, it is unclear how the reasoning in <u>Zippo</u> would apply to cases – like this one – in which the defendant uses Amazon's website as an intermediary, rather than operating its own "interactive" website to generate and fulfill sales orders.

Alternatively, one might point to the Supreme Court's opinion in <u>Calder</u> and its articulation of the "effects" test in support of a claim that personal jurisdiction over My Brittany's exists in this case, since the "effects" of defendants' allegedly infringing activity are arguably felt in New Hampshire.  <u>See</u> <u>Calder v. Jones</u>, 465 U.S. 783 (1984).  But, <u>Calder</u> involved defamation claims, which are sufficiently distinct from Douglas's copyright claims to suggest that <u>Calder</u>'s reasoning does not apply.  And, as importantly, Douglas does not invoke either <u>Calder</u> or its "effect test" in support of its argument that the court may properly exercise personal jurisdiction over My Brittany's.

Moreover, in seemingly limiting (or, perhaps, clarifying) the scope of <u>Calder</u>, the Supreme Court recently made clear that, "mere injury to a forum resident is not a sufficient connection to the forum.  Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows

that the defendant has formed a contact with the forum State.
The proper question is not where the plaintiff experienced a
particular injury or effect but whether the defendant's conduct
connects him to the forum in a meaningful way." Walden v.
Fiore, 571 U.S. 277, 290 (2014) (emphasis supplied).

In the context of this case, the reasoning of neither Zippo
nor Calder applies. Instead, the court is persuaded by Justice
Breyer's opinion in Nicastro and those courts that have
concluded that limited contact with a forum state of the sort
made by My Brittany's is insufficient to support the exercise of
personal jurisdiction. See, e.g., Rubie's Costume Co., Inc. v.
Yiwu Hua Hao Toys Co., No. 2:18-CV-01530-RAJ, 2019 WL 4058971,
at *3 (W.D. Wash. Aug. 28, 2019) (observing that "Courts in
other districts have found that an exercise of personal
jurisdiction is inappropriate where a defendant sells a small
number of products to consumers in the forum state but there is
no additional evidence the sales were 'expressly aimed' at the
forum" and concluding that "Defendant's sale of 59 costumes via
its Amazon account is hardly a continuous and deliberate
exploitation of the Washington market sufficient to satisfy the
'express aiming' requirement.") (collecting cases); Oticon, Inc.
v. Sebotek Hearing Sys., LLC, 865 F. Supp. 2d 501, 514-15
(D.N.J. 2011) ("Under Nicastro, whether it is five or nine sales

by Sebotek of SDT's allegedly infringing products, that is simply too small of a number from which to conclude that SDT purposefully availed itself of the New Jersey market.  Justice Breyer aptly noted in his concurrence that Supreme Court precedent makes clear that a single sale, even accompanied by more extensive sales efforts, is an insufficient basis for asserting jurisdiction.  Such scant sales activity does not show the 'regular flow' or 'regular course' of sales in New Jersey that justify the exercise of specific jurisdiction.  Likewise, here, the five or nine sales by Sebotek do not suggest that SDT engaged in a specific effort to sell in New Jersey.") (citations and internal punctuation omitted).  Indeed, the Court of Appeals for the First Circuit has itself recognized that, "A nonresident defendant purposefully avails itself of the forum state when the defendant's actions 'create a 'substantial connection' with the forum State.' . . . The number and duration of the remote contacts are significant to the analysis."  C.W. Downer & Co. v. Bioriginal Food & Sci. Corp., 771 F.3d 59, 68 (1st Cir. 2014) (quoting Burger King, 471 U.S. at 475) (emphasis supplied).

      As the Supreme Court has repeatedly stated, the threshold inquiry for purposeful availment is whether a "defendant's conduct connects him to the forum in a meaningful way."  Walden, 571 U.S. at 290.  That and other Supreme Court opinions expound

upon the concept of "minimum contacts" (or "purposeful availment") by employing phrases like "regular flow of products," and "regular course of sales," "substantial connection with the forum State," "significant activities within a State" and "continuing and wide-reaching contacts in the forum State."  Those phrases have meaning.  Here, defendants' meager sales to the plaintiff are not sufficiently "meaningful" to constitute a "purposeful availment" of the privilege of doing business in New Hampshire, nor are they adequate to render the exercise of personal jurisdiction over those defendants fundamentally fair and reasonable.  While My Brittany's limited sales to Douglas do provide some evidence of purposeful contact with this forum, they are too insubstantial to warrant the conclusion that My Brittany's should reasonably have anticipated being haled into court here.  See, e.g., World-Wide Volkswagen, 444 U.S. at 297.  See also Burger King, 471 U.S. at 477–78 ("Nevertheless, minimum requirements inherent in the concept of 'fair play and substantial justice' may defeat the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities.") (emphasis supplied).

Finally, the court notes another factor that counsels against the exercise of personal jurisdiction over My Brittany's.  As mentioned above, the only sales of My Brittany's

products into this forum are those that were initiated by Douglas; there is no record evidence of any other sales by My Brittany's into New Hampshire.  Given the circumstances of this particular case and considering all of the facts of record, the court is disinclined to rest the exercise of personal jurisdiction over My Brittany's exclusively on contacts that were arranged or induced by the plaintiff, Douglas.  As the District Court for the Southern District of New York has observed:

> It is apparently not uncommon in trademark, copyright, and patent infringement cases for plaintiffs to attempt to base personal jurisdiction over defendants on sales made either to the plaintiffs themselves or to plaintiffs' counsel or representatives.  As a result, there are a number of opinions addressing this issue.  A review of these cases reveals that most courts, both in this circuit and elsewhere, have found that personal jurisdiction may not be based on contacts "manufactured" by a plaintiff in this way, though the courts have relied on different rationales for this conclusion.

Chloe, Div. of Richemont N. Am., Inc. v. Queen Bee of Beverly Hills, LLC, 571 F. Supp. 2d 518, 524-25 (S.D.N.Y. 2008) (collecting cases), vacated on other grounds, 616 F.3d 158 (2d Cir. 2010).  See also Mor-Dall Enterprises v. Dark Horse Distillery, LLC, 16 F. Supp. 3d 874, 880 (W.D. Mich. 2014) ("a plaintiff may not manufacture jurisdiction by engaging in a sale merely to confer jurisdiction in a particular forum.") (citation

omitted); Edberg v. Neogen Corp., 17 F. Supp. 2d 104, 112 (D.
Conn. 1998) ("In the instant case, plaintiffs assert that
Neogen's single $246.00 sale to Cadbury constitutes 'minimum
contacts' sufficient to sustain personal jurisdiction.  This
'contact,' however, was initiated by [the plaintiff], not by the
defendant.  Regardless of [the plaintiff's] motives, it was
still the acts of [the plaintiff] that brought the infringing
product into the forum, not Neogen's promotion, advertising, or
sales activities.  Moreover, the courts have repeatedly held
that jurisdiction may not be manufactured by the conduct of
others.  Under such circumstances a defendant cannot be said to
have purposefully availed itself of the forum.  Only those
contacts with the forum that were created by the defendant,
rather than those manufactured by the unilateral acts of the
plaintiff, should be considered for due process purposes.  To
hold otherwise would allow a plaintiff to manufacture
jurisdiction over a non-resident defendant in any forum,
regardless of how inconvenient, even when the defendant has not
purposefully directed any activity toward the forum state.")
(citations omitted); See also Kindig It Design, Inc. v. Creative
Controls, Inc., 157 F. Supp. 3d 1167, 1174 (D. Utah 2016); Mor-
Dall Enterprises, 16 F. Supp. at 880; Krepps v. Reiner, 588 F.
Supp. 2d 471, 479 (S.D.N.Y. 2008); ISI Brands, Inc. v. KCC
Int'l, Inc., 458 F. Supp. 2d 81, 88-89 (E.D.N.Y. 2006); ESAB

Group, Inc. v. Centricut, LLC, 34 F. Supp. 2d 323, 333 (D.S.C. 1999).


    In light of the foregoing, the court concludes that it lacks personal jurisdiction over both My Brittany's and Jacqueline Sultana.


II.  <u>Transfer of this Case is Warranted</u>.

    Whenever a court concludes that it lacks personal jurisdiction over a defendant, it "shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . . in which the action or appeal could have been brought."  28 U.S.C. § 1631.  And, pursuant to 28 U.S.C. § 1400, civil actions to enforce copyright claims "may be instituted in the district in which the defendant or his agent resides."  Sultana resides in Wixom, Michigan, and My Brittany's principal place of business is there as well.  Plainly, then, venue lies in the United States District Court for the Eastern District of Michigan.


    Moreover, Douglas's claims of copyright infringement appear to have facial merit – at least based upon the limited factual record presented.  Consequently, dismissal of those claims would

not serve the interests of justice.  This matter will, then, be transferred to the Eastern District of Michigan.

### Conclusion

Cases like this beg an obvious question: if two or three sales (totaling less than $200) to a forum are insufficient – particularly when orchestrated by the plaintiff - then how much sales activity in a forum is necessary to support the exercise of personal jurisdiction?  There is no easy or self-evident answer.  Nor, unfortunately, can the answer be found in any bright line test.  Rather, each case is necessarily sui generis and must be resolved on its own unique facts.  "[D]ivining personal jurisdiction is more an art than a science," Sawtelle, 70 F.3d at 1388 (citation omitted), and thus necessitates "an individualized assessment and factual analysis of the precise mix of contacts that characterize each case," Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994).

Based upon this record, as well as the arguments advanced by the parties, the court concludes that it lacks personal jurisdiction over Sultana and My Brittany's with respect to Douglas's claims of copyright infringement.  It is, however, appropriate to transfer this matter to the Eastern District of Michigan.

Defendants' Motion to Dismiss Plaintiff's Complaint and/or to Transfer Venue (document no. 10) is granted in part and denied in part.  It is granted to the extent defendants seek a transfer of this action to the Eastern District of Michigan.  In all other respects, it is denied.  Pursuant to 28 U.S.C. § 1631, the Clerk of Court shall transfer this proceeding to the United States District Court for the Eastern District of Michigan.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

May 28, 2020

cc:  Michael J. Rye, Esq.
     Jeremy T. Walker, Esq.
     Jamie N. Hage, Esq.
     Katherine E. Hedges, Esq.